Daniei, Judge.
 

 After stating the case proceeded: In deciding the question, whether a variance between the writ and declaration can, after verdict, be taken advantage of by the defendant in arrest of judgment, it becomes necessary to make some observations upon the^ law and practice of the courts in England, as well as the law and practice of the courts of
 
 this State,
 
 and also on the decisions that have been made in this court on the subject. In England, when a person is about to commence a suit, the usual course of proceeding is,
 
 *33
 
 in the first place, to execute a warrant to an attorney of the court to have' the writ issued, and the pleadings in the cause made up. The attorney then gives instructions for the original; these instructions are contained in a paper called thr
 
 praecipe,
 
 in which he sets forth the cause of action. Formerly, the practice was to take the warrant and the
 
 praecipe
 
 to the chancery, where the
 
 original
 
 writ was caused to be made out by the Master of the Rolls
 
 ;
 
 which original recited the action as, stated in the
 
 praecipe.
 
 The
 
 original is
 
 a mandatory letter in parchment from the King, tested in his name, and sealed with the great seal. It is directed to the sheriff or other returning officer of the county where the plaintiff intends to lay the venue, and is made returnable to the court either of
 
 the King’s Bench or Common
 
 Pleas, at Westminster. If the sheriff return on the original
 
 non est
 
 inventus, the original is then left on file in the court, and a judicial writ or process issues, called a special
 
 capias ad respondendum,
 
 which is grounded upon the original. If the sheriff return on the capias,
 
 non est
 
 ire-
 
 ventus,
 
 the plaintiff then may issue an
 
 alias,
 
 and a
 
 plurics,
 
 and so on into outlawry, to compel an appearance by the defendant. When the defendant appears in court in consequence of the service of the original, or an
 
 arrest on
 
 any process which issues upon it, the plaintiff then files his declaration, and serves a copy on the defendant, who defends either by demurrer or plea. If be pleads to the action, then the whole of the pleadings to the making up of the issue are completed in the Superior Court at Westminster. A nisi
 
 prius
 
 record is then made out and transmitted to the court of
 
 nisi prius,
 
 or the assizes of the county where the venue is laid, that the issues may be there tried by a jury. When a trial takes place, and a verdict is rendered, it is entered on the
 
 nisi prius
 
 roll, or some paper attached to it which is called the
 
 postea,
 
 and delivered to the party in whose favor the verdict is rendered, who returns it into the Superior Court, at Westminster, where the record belongs; and on notice being given to the adverse party, a motion is then made for judgmentwhich, if no
 
 *34
 
 cause is shown to the contrary, is rendered by the court upon which issues the execution.
 

 In modern times the practice of commencing suit by
 
 original
 
 purchased but of Chancery, has been tacitly waived by the profession. The practice is now, for the attorney to leave the
 
 praecipe
 
 and a memorandum of bis warrant at the Filazcr’s office, and the Filazer thereupon issues a
 
 capias ad respondendum,
 
 in the first instance, keeping the
 
 praecipe
 
 as instructions for the
 
 original,
 
 if it afterwards becomes necessary, by a writ of error being brought after a judgment by default, on demurrer, or on plea of
 
 nul tiel record:
 
 for the want of an original is aided after verdict, by
 
 Slat.
 
 18,
 
 Elisa.
 
 c. 14. If a writ of terror should be brought, for the want of an
 
 original,
 
 in any of those cases where the defect is not cured by the Statute of Elizabeth, the plaintiff may, by a petition to the Master of the Rolls, obtain an
 
 original
 
 and move the court where the record is, to amend by adding the. the original, which is always granted. So that the record is complete, when in obedience to the writ of
 
 certi-orari,
 
 it is transmitted into the Court of Errors. Tiio plaintiff in error will then have nothing in the record Upon which he Can assign errors, and will fail in his effort to reverse the judgment. (1
 
 Saund.
 
 318,
 
 a. Archb. P. K. B. 73.)
 
 By the rules
 
 of the
 
 common law, great nicety and exactness were acquired in the proceedings and pleadings in a suit; small errors and inacilracics were always suro to be fatal to the party making them; as for instance, in bailable actions, the declaration should always correspond with the writ in the names of the parties, and in the cause of action,
 
 (Bingham
 
 v.
 
 Dickie, 1 Eng. C. L Rep. 276. Archb. Pra.
 
 68, 69, 124,) and if there was a variance in these, or in the sum demanded, between the writ and declaration, it would be fatal.— (Archb. 68.) The Legislature has from time to time, endeavored to remedy what it considered an evil, and has passed several statutes of jeofails and for the amendment of the law, to prevent justice being strangled in a net Of forms and technicalities. The Legislature, further to aid the administration of justice passed
 
 *35
 
 the statute 5
 
 Geo. 1 c.
 
 13, (in the year 1718.) The statute is as follows :
 

 " An Act for the amendment of writs of error, and "for the further preventing the arresting or reversing " of judgments after verdict.
 

 "Whereas great delay of justice hath of late years "been occasioned by defective writs of error, which, " as the law now stands* are not amendable: For remc- " dy whereof,
 
 Be it enacted,
 
 &c. that all writs of error " wherein there shall be any variance from the origin- " al record or other defect, may and-shall be amended " and made agreeable to such record by the respec- " tive courts where such writ or writs of error shall be "made returnable; and that where any verdict hath " been or shall be given in any action, suit, bill, plaint' "'or demand, in any of his Majesty’s courts of record " at Westminster, or in any other court of record' within "England or Wales, the judgment thereupon shall not "be stayed or reversed for any defect or fault, cither in “ form or substance in any bill, writ, original or judici- " al, or for any variance in such writs from the declara- " tion dr other proceedings :
 
 Frovided, nevertheless,
 
 That " nothing in this act contained shall extend or be con-"strded to extend to an appeal'of felony or murder, or "to any process upon any indictment or presentment, "or information of or for any offence nr misdemeanor " whatsoever.” (S
 
 Vol. Brit. Stat.
 
 43.)”
 

 It the aforesaid statute is in-force in this state, it cures-the defect in this case arising from a variance between the writ and declaration. It becomes us now to enquire, whether it is in force or not. When this country was first settled, it was foreseen that the establishment of courts of justice was absolutely necessary for- the well being of the society of people who were about to inhabit it. By the fourth clause of the great charter, power is given to the lords proprietors by and with the consent of the freemen or thejr delegates in General Assembly, to pass laws and make constitutions, establish courts of justice, and appoint judges and magistrates. The first judiciary system established in this state, was under
 
 *36
 
 t!iis charter. We learn from history, (1
 
 Martin
 
 303, 304,) and from the archives of the province, that there ^ was a court of chancery held by the Governor and Council, and a general court of common law jurisdiction held by a Chief-Justice and associates, and inferior courts of limited jurisdiction, called precinct courts, held by magistrates. In the year 1728, the lord’s proprietors surrendered their power of governing the province into the hands of the king, who in the year 1730 sent out a Governor, who was impowercd with the advice of the council, to call assemblies to exercise legislative powers according to former usage, and to establish courts of justice. I do not discover that any alteration was made in the judiciary system which had before existed, except that the Governor and
 
 Council were author-ised
 
 to hold a court of errors. I learn from the 7th and 20th sections of the act of 1746, that the suitors in the general court commenced their actions by
 
 capias ad respon-dendum,
 
 issued by the clerk and signed by the Chief-Justice. (Sw
 
 an.
 
 226, 228.) The general court held its terms at Edenton. In the year 1746, the assembly passed another law for establishing courts of justice, and regulating the proceedings therein. By this act the Court of Chancery, and the General or Supreme Court, were permanently fixed at Ncwbern. The General court was composed of a Chief-Justice and three associate Justices. Courts of Assizes were to be held by the Chief-Justice twice a year at the district Court-houses of Edenton, Wilmington and Edge-combe ; County Courts with limited jurisdiction were established instead of the precinct courts. Writs issuing from the general court were returned into it at New-bem, and the pleadings and proceedings thereon, were then carried on and transacted there, until the cause was at issue; when by a writ of
 
 nisi prius,
 
 it was sent down to the proper place for trial according
 
 to the
 
 practice of the courts of Common Pleas and King’s Bench, at Westminster. By the 40th section of the act, it is enacted “that all the statutes of jeofails which are now in force “in England, are hereby declared to extend to, and be
 
 *37
 
 “ in force
 
 here;
 
 and tlnat the same shall be duly ob-
 
 ‘‘
 
 served by all judges and justices of the several courts
 
 “
 
 of record within this province.” The king, after the lords proprietors surrendered the powers of government into his hands, directed that all the provincial acts of assembly should be sent to him, and on revision by himself in council, if they were disallowed they were to cease having any force. (2
 
 Martin’s Hist. N. C.
 
 2.)— In the year
 
 1754,
 
 the assembly passed another act concerning the judiciary, which was repealed by the king’s proclamation.
 
 (Davis 167.)
 
 The people having spread over a large portion of the province cast of the mountains, it became necessary to establish an additional number of district courts. In the year 1768, the assembly passed a new court law dividing the province into six districts,and established a superior court of justice in each of said districts. This act was limited to five years. In the 45th section, it is declared that, all the statutes of jeofails and amendments, which now are in force in England, are and shall be in force here.
 
 (Davis,
 
 872..) This act went into operation ; for it was the only law passed before the Revolution which gave the judges power to hold the Superi- or Courts at Hillsborough and Salisbury ; and we know from history that the Superior Courts were held at both of those places before the revolution. (2
 
 Martin,
 
 263.) In the year 1773, the assembly re-enacted the court law, which had just expired by efflux of time, containing the same clause relative to jeofails and amendments: A suspension clause was added restraining its operation until his Majesty’s pleasure should be known. A dispute arose between the king and the house of assembly, relative to the section in the act authorising attachments to issue against the property of debtors who were not, and never had been, residents of the province. The house of assembly refusing to strike it out of the bill, the king thereupon refused to ratify the law, (2
 
 Martin
 
 302).— The revolution took place and the province was changed into an independent state. In the year 1777, the Legislature passed a court law,
 
 (Rev. c.
 
 115) in which is to •be found the following section: (§35.) “And be it en-
 
 *38
 
 “ acted, that all the statutes of England and Great Bri- “ tain for the amendment of the law, commonly called “ statutes of jeofails, and which were heretofore enforced “ in this territory by any act or acts of the General Assembly under the late government, are hereby declared to have continued and to be now in full force in “this state, and shall bo duly observed by all judges “ and justices of the several courts of record within the “same, according to the true intent and meaning of the “said statutes, -unless where the same are, or may bo “ altered by this or any other act.” We know that the acts of 1746 and 1768 had been in force in this territory, under the provincial government. It would seem then upon this review, that the statute of jeofails and amendments referred to and enforced by these acts of the colonial legislature, including the
 
 Stat.
 
 of
 
 5 Geo.
 
 1, arc as completely embraced within this legislative enactment as though they had been incorporated into the act of 1777, and if so, they must bo “ duly observed by all judges and justices of the several courts of record within the same.”
 

 The act of 1777,
 
 (Rev. c.
 
 115,
 
 §35,)
 
 incorporates all the statutes of jeofail and amendment, including that of 5fh <?. 1 into the legislation of this State as fully as if they had been reenacted.
 

 Thc case of
 
 HutcHns
 
 v.
 
 Me-"jup.’
 
 no,/^approved.
 

 The case of
 
 Dudley
 
 v.
 
 bar
 
 339¿> approved.’
 

 Doubts however have been thrown over this subject by conflicting judicial opinions and decisions, and the painful and perplexing duty of endeavoring to remove these doubts and giving, if possible, certainty to the law, has devolv-cd upon us. In the case of
 
 Hutchins
 
 v.
 
 McLean, (Conference Rep.,
 
 110,) decided in 1800, by the Court of Conference, these statutes are recognized as being in force, The court decided in that case, that the judgment could not be arrested because of the defect there existing,
 
 after verdict,
 
 for that it was, (in the language of the Reporters,; excused by several
 
 acts of the General Assembly,
 
 for the amendment of the law. The expression is a little inaccurate, as we have no act of assembly which
 
 of itself,
 
 cures any defect by a verdict. The phrase should have been, by the act of Assembly enforcing the several statutes for the amendment of the law. But in the case
 
 Dudley
 
 v.
 
 Carmolt,
 
 (1
 
 Murph.
 
 339) decided ¡u ¡he Supreme Court in 1810, there was a direct and express decision upon the point. It was held that these
 
 *39
 
 statutes were in force here, and particularly that of
 
 S Geo.
 
 1, and upon this ground the motion in arrest was overruled. The case of
 
 Foscue
 
 v. Foscue, (3
 
 Hawks
 
 538) came before this court in 1825. The writ, or leading process, called on the defendant to answer the plaintiff as executor of
 
 Simon Foscue
 
 deceased, and the declaration alledged a detention from the plaintiff personally. After verdict for the plaintiff the defendant moved in arrest because of this substantial variance between the writ and the declaration — this motion was overruled, and the defendant appealed because of this and other alledged errors. The cause was elaborately argued here, but the objection in arrest was expressly given up as utterly untenable, and not admitting of an argument, and this court
 
 affirmed
 
 the judgment. So far all the adjudications had been in entire consistency with the unambiguous enactments in the act of 177". At the next term after the decision in
 
 Foscue
 
 v.
 
 Foscue,
 
 came on the case of
 
 Stamps
 
 v.
 
 Graves,
 
 (4
 
 Hawks
 
 102) in which aii objection was made herein arrest of judgment, (after a verdict and judgment below for the plaintiff,) for a variance between the writ and the declaration, for that the former was in
 
 debt,
 
 and the latter in
 
 assumpsit.
 
 The defendant’s counsel was proceeding to shew that the
 
 Slat. 5 Geo. 1,
 
 was in force when ho was informed by the Chief-Justice as a matter perfectly
 
 settled
 
 — “It
 
 is
 
 in force. It has been so decided in this court.” The argument stopped, and the point was not discussed on either side. The judgment of the coui’t was given upon other points in the case, but in delivering the judgment an opinion was expressed by Judge
 
 Henderson
 
 which shows that ho thought the objection fatal to the plaintiff. In fliis opinion he takes no notice whatever of the statute, and does not say whether it is a part of our law or not, but rests this part of his opinion upon the injury that might probably arise to the defendant himself upon a judgment by default, or injury to the bail. His reasoning, so far as it related to any suppo'séd injury that might happen to the defendant, was not applicable to the case then before the court. In that case, there was
 
 *40
 
 not a judgment by default, but an appearance, plea, trial, and verdict. It dobs not appear that any objection was raised on account of variance, until the case came into this court, the objection below rested entirely on a different point. The
 
 Stat.
 
 of
 
 Geo.
 
 1 does not profess to cure a defect for a variance between the writ and declaration, until after a general
 
 verdict;
 
 a judgment by default taken on such erroneous pleadings will not cure the defect: A writ of error might be brought and the judgment reversed. It is said that the hail might be entrapped and subjected in a very different case from the one, they supposed they had entered into as bail.— The court, in the case of
 
 Stamps
 
 v.
 
 Graves,
 
 say that, in England the bail to the
 
 suit are
 
 discharged by the defendant’s appearance — the condition of the bail bond is fulfilled. The bail to the action cannot be injured, because they contract their obligation after appearance, and this obligation is evidenced by what is called the bail form, on which the particular action is specified in which they are bail, and they can be made liable in no other. All this is true ; but I would ask where, do the hail get the particulars of the action which are specified in the bail form ? A short copy of the writ, with the sum sworn to, (if the action he by bill,) is obtained either from the signer of the writ, or at the sheriff’s office. If the action is commenced by orignal, the blazer furnishes a short copy of the
 
 capias,
 
 and also the sum sworn to.
 
 (Archb. p.
 
 103) The particular action and the sums which are insorted in the bail piece, are taken from what is contained in the writ, and in the affidavit to hold to bail, and not from the declaration. If therefore, the plaintiff declares for a different cause of action from that mentioned in the writ or affidavit to hold to bail, he thereby discharges the bail from their liability, (2
 
 Saund.
 
 72,
 
 a. Holly
 
 v.
 
 Tipping,
 
 3
 
 Wilson
 
 61;) as if the writ he in trespass on the case, and the declaration in debt. (7
 
 T.R.
 
 80.
 
 Archb. p.
 
 317.
 
 De la Cour
 
 v.
 
 Read 2 H. Black,
 
 278.) It is said that the bail here are bail to the writ an(j |,aji to the action. But as a judgment by default may be taken here without an appearance by the deten-
 
 *41
 
 dant, it seems to me that the bail are substantially, only special bail to the action. The bail gets the particular action, and the sum which is inserted in the bail piece or bond, from the writ in the hands of the sheriff: if, therefore, the plaintiff declares in a different action, I cannot see why the same law will not discharge the bail here as it does in England. I confess therefore that the reasoning in this opinion is not satisfactory, and at all events does not bear with decisive force on the question whether a variance between the writ and declaration is cured by a verdict. The court however did not arrest the judgment in that case, but granted a new trial upon another point, so that the plaintiff might move to amend in the court below! But there is a case decided in opposition to the adjudged cases before mentioned and which, if correctly decided, establishes that the variance here is not remedied by the verdict. It is the case of
 
 Herring
 
 v.
 
 Glisson, (ante
 
 2
 
 vol. p.
 
 156.) The writ was in
 
 trover)
 
 and the declaration in
 
 detinue,
 
 and there was a general verdict for the plaintiff. The court said, that the
 
 St at. 5 Geo.
 
 1, was for certain purposes, in force here, and as to all matters of form was to have full effect and complete operation ; but tins was such a matter of substance as could not be aided by that statute, and upon the force of the reasoning in the opinion expressed in
 
 Stamps
 
 v.
 
 Graves,
 
 arrested the judgment. I can find no warrant for the middle ground here taken. If the statute be one of those declared by the Legislature to be in
 
 full
 
 force here, then are the courts bound to render to it
 
 full
 
 obedience. That statute cures defects
 
 both in form
 
 and substance, of all such tilings as are mentioned in it; and it expressly declares, that after verdict, no judgment shall be arrested for a variance between the writ and declaration. I am sensible that no case which has been decided by this court should be overruled, but upon great deliberation and a thorough conviction that the decision was wrong. But after a full examination, I feel myself bound to say the legislation upon this subject is plain, positive and precise, and that the judgment in this last mentioned case is not on-
 
 *42
 
 ]y repugnant to a long series of previous adjudications, but to the explicitly declared will of the Legislature.— That will must be observed, and therefore, after verdict, no variance between the writ and declaration will authorize the court to arrestthe judgment.
 

 
 *39
 
 The case of
 
 Foscue
 
 v.
 
 Foscue
 
 (3
 
 Ilawks
 
 578,) approved,.
 

 The
 
 dictum
 
 of Tatioe, Chief-Justice,in
 
 Stamps
 
 v.
 
 Graves, ' 4 Hawks
 
 107,) approved.
 

 The argument of Hendehsok-, Judge, in that casé disapproved hy Daniel judge.
 

 
 *40
 
 Per Dahiet,,
 
 Judge,arguendo.
 
 is special bail to
 
 *41
 
 the action, and "if the declaration, varies from the writ they are discharged, for the same reason that bail ,to the action is in England.
 

 The case fit4
 
 Herring
 
 v.
 
 Glisg? on, (ante
 
 2
 
 Vol. p.
 
 156,) overruled!
 

 
 *42
 
 A general verdict upon a declaration containing a defective count,will not entitle tlie plaintiff to judgment.
 

 But when it appears that the evidence applied only to the good count the verdict will be corrected
 

 So where in debt on the statute of usury, one count was for double the sum lent, and another for double the a" mount lent and interestreceivedfe thevcrdict was for tile first sum — it was applied tolhat count.
 

 Damages arc Slot recoverable in debt, upon a penal statute, and where they Were assessed by the jury the judgm’t as to them was reversed at the costs of the plain tiff.
 

 The second ground taken by the defendant in arrest-is, that the declaration contains two counts, one of which is bad, and the jury have rendered a general verdict upon the plea of
 
 nil debet.
 

 ' If there be a general verdict and the jury have.-. .. sessed entire damages, and it shall appear that one of several counts in the declaration it is bad, it is fatal, and the judgment shall be arrested. (2
 
 Doug.
 
 730.
 
 Cook v. Cox,
 
 3
 
 M. & S.
 
 110.) But where a general verdict has been taken, and evidence given only on the good counts, the court of king’s bench have permitted the
 
 postea
 
 to he amended by the notes of the judge who tried the cause, by permitting the verdict to be entered specially
 
 on the good counts.
 
 (1
 
 Doug.
 
 376, 2
 
 Ib.
 
 746,
 
 Williams
 
 v. Breden, 1
 
 B.
 
 &
 
 P.
 
 329. 2
 
 Saund.
 
 49
 
 a. Spicer
 
 v.
 
 Teasdule, 3 B.
 
 &
 
 T.
 
 171.) The jury in this case have found upon the issue made up upon the plea of nil
 
 debet,
 
 that the defendant owes the sums or penalties set forth in both counts. We see that the sum set forth in the good count, to wit, double the money loaned is specific, and the jury have found that the defendant detains
 
 that
 
 sum. What is there to prevent the plaintiff having judgment for that sum ? It is not like a case where entire damages arc assessed, and the court is unable to see how much is assessed on the good, and how much on the bad counts. I think this reason offered in arrest is not sufficient.
 

 The third reason offered in arrest is, that this being a penal action the jury have assessed damages to the plaintiff for the detention, and the
 
 court gave judgment
 
 for the same. This reason is good in law. The plaintiff only obtained an inchoate and an imperfect degree of property by commencing suit for the penalty ; but it is not consummated till judgment. (2
 
 Bl. Com.
 
 436, 7.) No damages can accrue or be assessed to tlie plaintiff
 
 *43
 
 for the detention of a debt, which he had not a complete property in, until the rendition of the judgment. The verdict rendered in a penal action regularly, after finding the debt, should immediately pass on to the assessment of cost,
 
 (Frederick
 
 v.
 
 Lookout,
 
 4
 
 Burr,
 
 2018,
 
 Cuming
 
 v.
 
 Sebly, Ib.
 
 2489
 
 Archb. p.
 
 217.) The judgment for this reason must be reversed, so far as relates to the damages, and also for the debt, so far as relates to tho sum of j$213 66 mentioned in the first count of the declaration.
 

 And as this court is to render such judgment as the record shows the Superior Court should have rendered; it is further considered and adjudged by the court that the plaintiff
 
 Jonathan West,
 
 who sues as well for the state of North-Carolina as for himself, recover against the defendant,
 
 Thomas llatledge, the
 
 sum off>160 for his debt, it being the sum which the verdict of the jury finds that the said
 
 Thomas
 
 owes on the second count of the plaintiff’s declaration, and also that the plaintiff recover his costs incurred in the courts below- — and it is further considered and adjudged that the plaintiff pay the costs of this court.
 

 Per Curiam — Judgment atitrmeij.